IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>i2a TECHNOLOGIES, INC., a California Corporation, VICTOR BATINOVICH, an individual,<br><br>Defendants. | No. C 15-04963 WHA<br><br>**ORDER FINDING DEFENDANTS IN CIVIL CONTEMPT OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

In this wage-and-hour action, the Secretary of Labor seeks an order holding defendants in civil contempt for failing to comply with a temporary restraining order and subsequent preliminary injunction. At a hearing, defendants were ordered to show cause why they should not be held in civil contempt. For the reasons stated below, the motion of the Secretary of Labor is **GRANTED**.

## STATEMENT

Defendant i2a Technologies, Inc., is a California corporation that manufactures semiconductors. i2a filed a Chapter 11 bankruptcy petition in October 2014 but voluntarily dismissed the case in April 2015. In connection with that dismissal, i2a entered into an agreement with its secured creditors, Wells Fargo & Co. and the United States Internal Revenue Service, which provided for the distribution of proceeds from any sale or liquidation of i2a

(Dkt. No. 23 at 37–40). i2a's management and ownership attempted to sell the company to new investors to no avail.

At all material times, defendant Victor Batinovich owned at least sixty-five percent of i2a and maintained sole authority over the company's bank account. Batinovich was (and remains) one of three members of the board of directors of i2a. He also served as the company's chief executive officer, has never officially resigned, and appears still to have such authority. i2a required Batinovich's signature in order to pay employees, utilities bills, rent, bank loans, or any vendors (and still does). Batinovich held the authority to hire and fire employees. The California Secretary of State lists Batinovich as the agent for service of process for i2a (Nlemigbo Decl. at 1–2; Pham Decl., Exh. E; Solomon Decl. at 1).

The Department of Labor began investigating i2a in May 2015 based on tips from employees that the company failed to pay its workers for certain bi-weekly pay periods. This investigation revealed that i2a's workers had not been paid for the bi-weekly pay periods that ended on August 24, 2014, September 7, 2014, September 21, 2014, October 5, 2014, April 19, 2015, May 3, 2015, May 17, 2015, May 31, 2015, June 14, 2015, October 4, 2015, October 18, 2015, November 1, 2015, and November 15, 2015. To date, over two hundred thousand dollars in promised wages remain outstanding (Pham Decl. ¶¶ 6–10, 16, 19 –24, Exh. C).

Batinovich stated that he left i2a in July 2015, but he never communicated his departure to i2a's employees and never directed them to stop working. Batinovich failed to resign his positions on the board of directors or as the chief executive officer of the company. Batinovich returned to i2a's premises intermittently since July and signed paychecks as late as September 29 (or allowed pre-signed checks to be used). Batinovich retained sole authority over i2a's bank account, and the company fell behind on its utilities bills and rent. Batinovich also continued his efforts to sell the company to investors (Nlemigbo Decl. at 1–2; Pham Decl., Exh. E).

Frederick Solomon, the engineering manager, oversaw the "engineering" work performed at i2a after Batinovich purportedly left the company (Nlemigbo Decl. at 2). He testified that he and other employees kept working because "we have a job to do and nobody

2

has asked us to stop coming in. . . . [C]ustomers expects [sic] us to do our job" (Solomon Decl. at 1). Solomon lacked the authority to fire the employees and close i2a's headquarters.

The Secretary commenced this action for violations of the Fair Labor Standards Act in October 2015 and shortly thereafter moved for a temporary restraining order. The Secretary served Batinovich and i2a (through Batinovich, its agent for the service of process) with its motion for a temporary restraining order, supporting declarations, the complaint, and the order setting a hearing on the temporary restraining order by mailing the documents overnight to i2a's headquarters, addressed to Batinovich. On November 3, after a hearing at which Batinovich did not appear, a temporary restraining order issued. That order provided, in relevant part (Dkt. No. 12 at 3):

> 1. Defendants are enjoined and restrained from violating the provisions of Section 15(a)(1) of the Fair Labor Standards Act, 29 U.S.C. 215(a)(1), in any of the following manners: Defendants shall not transport, ship, deliver, or sell in commerce, or offer to do so, any goods produced by i2a Technologies, Inc., or Victor Batinovich as to which the U.S. Department of Labor notifies or has notified Defendants in writing that it has a good faith basis to believe were produced by employees who were not paid at least minimum wage in violation of Section 6 of the FLSA, 29 U.S.C. 2016;
>
> 2. Defendants shall make good on the payrolls due to their employees including paying their employees at least the federal minimum wage of $7.25 per hour as required by Section 6 of the FLSA, 29 U.S.C. 206; and
>
> 3. Defendants are enjoined from violating the provisions of Section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(4) and shall not discourage employees in any way not to pursue their rights under the FLSA or coerce them in any way to work without pay.

The order only referred to defendants' failure to pay any wages for the pay periods that ended on October 4, 2015, and October 18, 2015, and further pay periods as they came due (*id.* at 2). Finally, that order also ordered Batinovich to show cause why a preliminary injunction should not issue. The Secretary served the temporary restraining order and order to show cause, its motion and supporting declarations, and the complaint by hand delivering the documents to Batinovich's adult son at i2a's headquarters and by mailing those documents to Batinovich at the same address.

3

On November 17, after a hearing at which Batinovich appeared *pro se*, an order converted the temporary restraining order to a preliminary injunction (Dkt. No. 19). Counsel for the Secretary personally served Batinovich with the temporary restraining order and the complaint in this action at that hearing. Batinovich indicated that he could receive further service at the headquarters of i2a. At the hearing, the undersigned ordered Batinovich to appear at a hearing on December 1 to show cause why he should not be held in contempt of the temporary restraining order (Dkt. No. 23 at 47–50). Following the November 17 hearing, the hourly employees ceased coming in to i2a's headquarters. Only Solomon and Batinovich's son, Andrew, continue to perform any work for the company.

To date, neither i2a nor Batinovich has made good on any of the intermittent missed payrolls since 2014, and they have missed the last four consecutive payrolls (those ending on October 4, October 18, November 1, and November 15). All hourly employees ceased working on November 17, following the preliminary injunction hearing.

Although all thirteen missed payrolls remain outstanding, the temporary restraining order and the preliminary injunction only required the defendants to make good on the payrolls for the pay periods that ended on October 4 and October 18, and further payrolls that came due since the temporary restraining order issued (*i.e.*, those for the pay periods ending November 1 and November 15, which came due after the temporary restraining order issued). The missed payrolls for the time period covered by the temporary restraining order and the preliminary injunction total $56,470.42 (Pham Decl., Exh. C).

The Secretary now seeks to hold Batinovich and i2a in civil contempt for violating the temporary restraining order and subsequent preliminary injunction by failing to make good on those payrolls. Batinovich has not responded to the Secretary's motion. This order follows the Secretary's brief, oral argument, and the sworn in-court testimony of Batinovich, Solomon, and one hourly worker.

**ANALYSIS**

The Secretary seeks to hold i2a in contempt of the temporary restraining order because it failed to pay their employees back wages for the pay periods that ended on October 4 and 18

4

and for further failing to pay wages as they came due for the pay periods that ended on November 1 and November 15. The Secretary also seeks to hold Batinovich personally liable for those same violations as an employer within the meaning of Section 3(b) of the Fair Labor Standards Act.

### 1. CIVIL CONTEMPT.

Federal courts have the power to enforce compliance with their orders. One way is through holding a party in civil contempt. *International Union v. Bagwell*, 512 U.S. 821, 831 (1994). To establish a *prima facie* case for civil contempt, the moving party must establish by clear and convincing evidence that the defendants: (1) violated a court order, (2) beyond substantial compliance, and (3) such violation was not based on a good faith and reasonable interpretation of the order. *Labor/Community. Strategy Center v. Los Angeles County Metropolitan Transportation Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009). The temporary restraining order and subsequent preliminary injunction required defendants to pay their employees' wages as they became due. The Secretary has provided clear and convincing evidence, in the form of sworn statements from i2a's remaining managers and some of its other employees, that neither i2a nor Batinovich paid their employees since for the pay periods ending on October 4, 2015, October 18, 2015, November 1, 2015, and November 15, 2015. Such failure plainly violated the temporary restraining order and subsequent preliminary injunction beyond substantial compliance, and there is no indication that either defendant acted based on a good faith interpretation of the order.

The issue remains whether Batinovich may be held personally liable for violations of the FLSA, as now discussed.

### 2. BATINOVICH'S PERSONAL LIABILITY.

Section 203(d) of Title 29 of the United States Code provides that for the purposes of the FLSA, "[e]mployer includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." That definition "is not limited by the common law concept of employer, but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011–12 (9th Cir.

1999). Our court of appeals evaluates whether the circumstances of the working relationship demonstrates that an individual is acting as an employer as a matter of "economic reality." *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Our court of appeals has held that a manager or officer of a company is an employer for the purposes of the FLSA if he holds a "significant ownership interest" and maintains the control of the day-to-day functions of the company. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (citing *Lambert*, 180 F.3d at 1012). *Boucher* specifically held that each of three individual defendants met the definition of employers under FLSA: (1) an individual responsible for handling labor and employment matters for a company, who held a thirty percent ownership stake, (2) a second individual who served as chairman and chief executive officer for a company, who held a seventy percent ownership stake, and (3) a third individual who served as chief financial officer and oversaw cash management. *Ibid*.

Although Batinovich purportedly attempted to walk away from i2a, he maintained a sixty-five percent ownership stake in the company and controlled the company's finances. This included control over payroll. Solomon oversaw the employees' "engineering" work, but he continued to report to Batinovich (Solomon Decl. at 2).[1] Moreover, Batinovich effectively admitted that he retained control over personnel assignments at i2a with the following exchange at the preliminary injunction hearing (Dkt. No. 23 at 49–50):

> The Court: That's the jam you're up against. So every day that goes by, they continue to work, you're running it up even worse. So that's the problem you're up against here.
>
> Mr. Batinovich: Today I'm asking — I have not asked anybody to come to work. I have not asked. If somebody comes and volunteers and stuff like that, that's —
>
> The Court: It doesn't matter what you do — it does matter what you do, but your company that you own, you are allowing them to continue to come to work and they're not being paid. Now, the only way for you to get out from — well, maybe the only way. I don't know. One way to get out from underneath that would be —

---

[1] Solomon is not named as a defendant in this action, so this order does not address whether Solomon could be liable as an employer under the FLSA. As our court of appeals held in *Boucher*, numerous officers with control over various aspects of the business may be jointly liable as employers for that purpose. Solomon's role in overseeing the ongoing work does not preclude a finding that Batinovich is an employer for FLSA purposes.

6

Mr. Batinovich:  Chase them out.

In other words, Batinovich allowed (or suffered) the work force to continue working.  The company appears to have scraped by during his purported absence, but according to Solomon, i2a is approaching its demise: "Utilities, bank loans and rent are not paid, we are in trouble and if money is not coming in something will happen, whatever comes first, we don't know in what order it will happen" (Solomon Decl. at 2).

Batinovich is the owner of the company and continued to allow the workers to labor for the company and thus for his benefit.  He was and remains the one with authority to lay people off and to shut down the company.  He cannot simply walk away and pretend the labor force is working for someone else or running on auto-pilot.  He has the power to control this situation and to benefit from it.  Thus, he was and remains legally responsible for the outstanding payrolls as an employer under the FLSA, and his failure to make good on those payrolls places him in contempt of the temporary restraining order and preliminary injunction in this matter.

### 3. REMEDIAL SANCTIONS.

The purpose of civil contempt is to coerce compliance with the court's order rather than punish disobedience.  *Spallone v. United States*, 493 U.S. 265, 280 (1990).  The Secretary requests that if defendants fail to make good on the $56,470.42 in wages due since September 29 the defendants should be fined, jointly and severally, $10,000 plus $500 per day for future violations.  Our court of appeals has upheld an identical fine for civil contempt against a corporation for refusing to produce certain documents relating to a collective bargaining agreement to the National Labor Relations Board.  *See National Labor Relations Board v. A-Plus Roofing, Inc.*, 39 F. 3d 1410, 1419 (9th Cir. 1994).  The Secretary further requests that if defendants fail to timely pay the outstanding payrolls, they should be required to deposit all of i2a's revenues into an escrow account, to be held there until the payments are made.  Finally, the Secretary requests its reasonable costs and attorney's fees in bringing this motion.

This order finds Victor Batinovich and i2a in civil contempt of the temporary restraining order dated November 3, 2015 and the preliminary injunction dated November 17, 2015 by reason of their failure to pay the payroll for the periods ending October 4, 2015, October 18,

2015, November 1, 2015, and November 15, 2015. Batinovich and i2a may purge this contempt by paying the outstanding $56,470.42 to their employees by **DECEMBER 31**. The Secretary may immediately begin discovery into Batinovich's personal financial circumstances, including taking records and taking the depositions of Batinovich, his spouse, and i2a. On **JANUARY 1** or thereafter, the Court will then entertain a motion for further specific sanctions. Defendants are hereby **ORDERED** not to hide or dispose of their assets or income sources other than for ordinary living expenses.

## CONCLUSION

For the reasons stated above, this order finds that both defendants are in civil contempt of the temporary restraining order and subsequent preliminary injunction. Defendants may purge themselves of civil contempt by paying employees the $56,470.42 in outstanding wages by **DECEMBER 31**. The Clerk shall please **SERVE** this order on Victor Batinovich at the address he provided at the preliminary injunction hearing.

**IT IS SO ORDERED.**

Dated: December 2, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE