IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>    Plaintiff,<br><br>  v.<br><br>i2a TECHNOLOGIES, INC., a California Corporation, VICTOR BATINOVICH, an individual,<br><br>    Defendants.<br>                                                   / | No. C 15-04963 WHA<br><br>**ORDER GRANTING THE SECRETARY OF LABOR'S MOTION FOR DEFAULT JUDGMENT AND DENYING VICTOR BATINOVICH'S MOTION TO SET ASIDE DEFAULT** |

**INTRODUCTION**

In this wage-and-hour action, defendants failed to answer the complaint. The Secretary of Labor requested entry of default by the Clerk, which request was granted. The Secretary now moves for default judgment, and one defendant moves to set aside the entry of default. At this stage after default has been entered, defendant needs to show a meritorious defense but has failed to do so. The Secretary of Labor's motion for default is **GRANTED**, and defendant's motion to set aside the default is **DENIED**.

**STATEMENT**

Defendant Victor Batinovich was the majority shareholder, chief executive officer, and a member of the board of directors of i2a Technologies, Inc. i2a manufactured semiconductors. In May 2015, the Department of Labor began investigating i2a and Batinovich for failure to pay

their hourly employees. The investigation revealed that defendants failed to pay $205,323.84 in wages, covering nine two-week pay periods between August 2014 and June 2015. Furthermore, the investigation revealed defendants had continuously failed to pay their employees for work performed between September 21, 2015 and November 17, 2015, resulting in an additional $56,470.42 in unpaid wages.

Batinovich purportedly abandoned i2a in July 2015, although he returned to the office intermittently over the following months. He never communicated his departure to i2a's employees and never directed them to stop working. Batinovich failed to resign his positions on the board of directors or as the CEO of the company. He retained his majority stake in the company, although he sought to sell the company to investors. Batinovich purportedly left the company under the control of Frederick Solomon, the engineering manager, although Solomon later testified the company continued to operate without anyone in charge.

The Secretary of Labor commenced this action in October 2015 and moved for a temporary restraining order requiring defendants to pay their employees' outstanding wages for work performed that month — a total of $56,470.42. The Secretary also sought to enjoin the sale and shipment of so-called "hot goods" that were made by workers who were not paid minimum wage. The Secretary served defendants with notice of the action and its motion for a temporary restraining order, but no one appeared for the defendants at the hearing. The Court issued the requested temporary restraining order and required defendants to show cause at a later hearing why a preliminary injunction should not issue (Dkt. No. 12).

In November 2015, the Court held a hearing on the Secretary's motion to convert the temporary restraining order into a preliminary injunction. Batinovich appeared *pro se* at the hearing. He stated that he had not received any service of process in this action, although he was listed as the agent for the service of process for i2a. At the hearing, counsel for the Secretary personally served Batinovich with the temporary restraining order, the summons, and the complaint. Batinovich stated that he could receive further service at the headquarters of

i2A. An order converted the temporary restraining order to a preliminary injunction (Dkt. No. 19).

At the hearing, the Secretary informed the Court that Batinovich and i2a had failed to pay any of the outstanding wages required by the temporary restraining order, and that the employees continued to work without pay. Batinovich turned to the employees in the gallery and directed them to stop working. They did not return to work at i2a thereafter. Batinovich and i2a were ordered to show cause why they should not be held in civil contempt for failing to pay the $56,470.42 as required by the temporary restraining order (Dkt. No. 23).

After hearing on the issue of contempt, at which Batinovich again appeared *pro se*, an order held that Batinovich himself met the definition of an employer under the Fair Labor Standards Act (in addition to i2a), even though he purportedly abandoned i2a in July 2015. Accordingly, that order held both Batinovich and i2a in contempt of the temporary restraining order. It provided that defendants could purge themselves of contempt by paying the outstanding $56,470.42 in outstanding wages by December 31, 2015 (Dkt. No. 27).

December 31 passed, and the $56,470.42 remained unpaid. In January 2016, the Secretary moved to incarcerate Batinovich for failing to purge his civil contempt. An order held that if Batinovich failed to purge his contempt by March 1, 2016, he would be incarcerated until he purged the contempt (Dkt. No. 40). Less than two hours before the deadline to purge his contempt, Batinovich paid the outstanding $56,470.42, and the custody order was rescinded (Dkt. Nos. 44–45).

Meanwhile, at some point after December 2015, Batinovich discussed the sale of i2a or its assets with an investor named Tri Hoang and Hoang's company, AIPAC, Inc. Throughout his correspondence with Hoang, Batinovich frequently complained about the challenges he faced with this litigation, although he only referred to the $56,470.42 that was the subject of the injunction and contempt orders. Batinovich never mentioned the $205,323.84 in unpaid wages dating back to 2014.

Batinovich avers that he understood Hoang and AIPAC would assume all liability arising from this lawsuit in connection with their eventual purchase of i2a. He further avers that he understood Hoang and AIPAC's corporate counsel to represent him in this action, although he offers no basis for that belief. Nevertheless, in February 2016, Batinovich retained Attorney Dan Ko Obuhanych, purportedly at the recommendation of AIPAC's counsel in this action. Attorney Obuhanych appeared for Batinovich at the hearing on the Secretary's motion to incarcerate Batinovich. Batinovich avers he believed AIPAC would be covering Attorney Obuhanych's fees but again offers no basis for that belief. It appears that Batinovich completed a sale of i2a, or at least its assets, to AIPAC but that his relationship with Hoang and AIPAC fell apart after that sale (Batinovich Decl. ¶¶ 4–5).

In April 2016, nearly two months after Attorney Obuhanych appeared as counsel for Batinovich, the Secretary moved for the entry of default against both defendants, inasmuch as neither had answered the complaint. The Clerk entered the default (Dkt. No. 48).

In July 2016, the Secretary moved for default judgment. Neither defendant responded to the motion, but four weeks later, Batinovich sought leave to substitute Attorney Steven Paul Cohn as counsel, which leave was granted (Dkt. No. 52). One week before the hearing on the motion for default judgment was scheduled, Batinovich then moved to set aside the default and filed a proposed answer. His answer included third-party claims against Hoang and AIPAC (Dkt. No. 54). An order continued the hearing on the Secretary's motion for default judgment so that it could be considered in conjunction with Batinovich's motion to set aside the default. The Secretary opposed Batinovich's motion, and Batinovich failed to reply. This order follows two briefs from the Secretary (one on each motion), Batinovich's opening brief in support of his motion to set aside the default, and oral argument at which no one appeared for either defendant.

**ANALYSIS**

In evaluating a motion for default judgment, we must consider:

4

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering whether to enter default judgment, the factual allegations of a complaint are accepted as true. *See Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

On the other hand, Rule 55(c) provides that a court "may set aside an entry of default for good cause." Good cause is analyzed pursuant to three "*Falk* factors":

> (1) whether the plaintiff will be prejudiced, (2) whether the defendant has [no] meritorious defense, and (3) whether culpable conduct of the defendant led to the default.

*Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). A request to set aside default may be denied if any one of the three *Falk* factors applies. *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004).[1]

The factors to consider on each motion overlap, so this order addresses them in conjunction.

### 1. MERITS.

Several of the factors set forth above concern the merits of the Secretary's case and defendants' responses. Here, Batinovich does not dispute that he was in charge of i2a until July 2015. Nor does he dispute the amount owed to the employees — $205,323.84. Batinovich simply argues that he has raised several meritorious defenses that warrant setting aside the default. He has not.

*First*, Batinovich "believed he was not personally liable because he had, essentially, abandoned the company's operations in July of 2015" (Def.'s Mtn. at 6). As stated, the only

---

[1] Batinovich contends the Clerk lacked authority to enter default in this action, because he had already appeared, citing Rule 55(b)(1). That rule relates to the Clerk's entry of default *judgment*, not of *default*. Rule 55(a) plainly authorizes the Clerk to enter default against any party that failed to answer a complaint.

5

1   unpaid wages still in our case were incurred *before* July 2015, so Batinovich's abandonment of
2   i2a did not absolve him of the liability asserted herein. Moreover, the order holding Batinovich
3   in civil contempt found that Batinovich remained an employee *even after* his purported
4   abandonment (though before any sale of the company), so this argument has already been
5   rejected.

6   *Second*, Batinovich argues that the Court's determination that Batinovich was an
7   employer under the FLSA relied on testimony from a hearing at which Batinovich was not
8   represented by counsel. Batinovich makes no substantive arguments challenging that finding,
9   he simply asserts that he was not represented by counsel, and thus could not effectively cross-
10  examine Frederick Solomon, whose testimony. Again, the only outstanding wages were
11  incurred *before* Batinovich purportedly put Solomon in charge. Moreover, the order finding
12  Batinovich in civil contempt expressly acknowledged the possibility that Solomon could also be
13  an employer under the FLSA. Batinovich's arguments are meritless.

14  *Third*, Batinovich argues that he does not understand why Attorney Obuhanych failed to
15  answer the complaint, but that is not a defense. Batinovich may feel that Attorney Obuhanych
16  violated his duties as counsel, but that has no bearing on our action.

17  *Finally*, Batinovich argues that he believed AIPAC assumed i2a's wage liabilities..
18  Perhaps Batinovich is entitled to indemnification from AIPAC, but that is not a defense to his
19  own liability, nor should we delay judgment in the interest of the employees who have been
20  denied. Every penny of unpaid wages at issue in this case came due while Batinovich was at
21  the helm of i2a, and he must bear that liability in the first instance.

22      **2.    AMOUNT OF THE JUDGMENT.**

23  The Secretary has established, with sworn evidence based on i2a's wage records, that
24  the amount of wages owed up to July 2015 amount to $205,323.84. Neither Batinovich nor i2a
25  has ever disputed that amount. The Secretary also seeks the same amount in liquidated
26  damages under Sections 216(b) and 260 of Title 29 of the United States Code for a total
27  recovery of $410,647.68. Those sections provide that the Secretary may recover liquidated

damages in the same amount of the unpaid wages unless defendants can establish that its failure to pay "was in good faith and that [they] had reasonable grounds" to believe their conduct complied with the FLSA. Batinovich and i2a have never contended that they failed to pay wages in good faith.

This order finds that the Secretary is entitled to judgment in the amount of $410,647.68, comprising the unpaid wages and liquidated damages.

### 3. CULPABLE CONDUCT.

A defendant's conduct is culpable if he received actual or constructive notice of the filing of the action and intentionally failed to answer. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2000), *overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001). "When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1093 (9th Cir. 2010).

Batinovich has been aware of this action for more than eight months. As the CEO and majority shareholder of i2a (and as a former defendant in federal court), Batinovich plainly has the sophistication to understand the gravity of this action, and the importance of responding to it. Yet, whether intentionally, or through willful ignorance, he has brushed it aside at every turn, reciting his theory that he could avoid responsibility for his actions simply by walking away from it. As this Court has warned Batinovich repeatedly and held in the various orders throughout this case, that is simply not the case. Batinovich's indifference even pervaded the instant motions. He failed to respond to the Secretary's motion, he failed to reply to the opposition to his own motion, and he failed to appear at the hearing on those motions.

Batinovich has been a model of culpability throughout this litigation, and it is time for him to face the consequences.

7

### 4. PREJUDICE TO THE PLAINTIFF.

The Secretary commenced this action on behalf of hourly employees who missed more than a dozen paychecks. Any delay in the resolution of this action prevents those employees from receiving the wages owed to them for more than two years. Meanwhile, as stated, any delay would only serve the purpose of apportioning liability among various parties, and it would allow Batinovich to continue his dilatory efforts to shift the blame, prejudicing the Secretary and the workers on whose behalf he brought this action. Thus, setting aside the default would cause substantial to the Secretary and the employees he represents.

### 5. INJUNCTIVE RELIEF.

Finally, the Secretary requests two forms of injunctive relief. *First*, The Secretary requests that the Court issue a restitutionary injunction requiring defendants to pay the back wages directly to the employees, which request is **GRANTED**. *Second*, it requests a prospective injunction that converts the present preliminary injunction into a permanent injunction.

> In deciding whether to grant injunctive relief, a district court must weigh the finding of violations against factors that indicate a reasonable likelihood that the violations will not recur. A dependable, bona fide intent to comply, or good faith coupled with extraordinary efforts to prevent recurrence, are such appropriate factors. An employer's pattern of repetitive violations or a finding of bad faith are factors weighing heavily in favor of granting a prospective injunction.

*Brock v. Big Bear Mkt. No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987). Here, i2a and Batinovich have missed *thirteen* payroll periods and they have shown *no* intent to comply with the law in the future. However, it appears, albeit vaguely, that Batinovich has sold his interest in i2a to AIPAC and so should not be held liable for any prospective FLSA violations by that company. Thus, this order **CONVERTS** the preliminary injunction in this action as to i2a, but not as to Batinovich, into a permanent injunction. This is without prejudice to the Secretary seeking to extend the prospective injunction to Batinovich supported by proof that he retains some interest in i2a.

Both Batinovich and i2a, however, are hereby bound to a restitutionary injunction requiring payment of back wages totaling $205,323.84 as detailed in Exhibit A of the Declaration of Mary Pham and appended as Exhibit A to this order (Dkt. No. 49-1).

## CONCLUSION

To the extent stated above, the Secretary's motion for default judgment is **GRANTED**, and Batinovich's motion to set aside the default is **DENIED**. Victor Batinovich and i2a Technologies, Inc., are hereby ordered and enjoined to pay back wages totaling $205,323.84. They must also pay liquidated damages in the same amount, for a total of $410,647.68. Payment shall be made as follows:

> Within **21 DAYS** of the entry of this order, defendants shall deliver to District Director Susana Blanco, Wage and Hour Division, United States Department of Labor, 90 7th Street, Suite 12-100, San Francisco, CA 94103-6719 a schedule containing the last known home address, social security number, and telephone number (if known) for each person named on Exhibit A appended to this order.
>
> Within **84 DAYS** of the entry of this order, defendants shall pay the full amount of back wages and liquidated damages due pursuant to this order and the accompanying judgment by delivering two separate cashier's checks or money orders, each in the amount of $205,323.84 made payable to "Wage & Hour Div., Labor." One remittance shall be allocated to back wages, which shall be shown by writing "i2a-BWs" in the subject line; the other remittance shall be allocated to liquidated damages, which shall be shown by writing "i2a-LDs" in the subject line. Both remittances shall be delivered to Wage and Hour Division District Director Susana Blanco at the address listed in the above paragraph.
>
> The Secretary shall distribute the back wages and liquidated damages and shall file a status report on the distribution by **DECEMBER 15 AT NOON**.

i2a is further permanently enjoined according to the same terms as the preliminary injunction already in place (Dkt. Nos. 12, 19). Judgment will follow.

**IT IS SO ORDERED.**

Dated: September 9, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE